**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JORDON SIMMONS,
*Defendant-Appellant*.

No. 11-10459

DC No.
1:10 cr-0789
JMS

OPINION

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
October 8, 2014—University of Hawaii William S.
Richardson School of Law
Honolulu, Hawaii

Filed April 3, 2015

Before: A. Wallace Tashima, Johnnie B. Rawlinson,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

# SUMMARY[*]

### Criminal Law

Vacating a sentence for drug and firearm offenses, the panel held that the defendant's prior conviction for second degree escape in violation of Hawaii Revised Statutes § 710-1021 was not a "crime of violence" under the career offender guideline U.S.S.G. § 4B1.1(a).

The panel held that because § 710-1021 includes both active and passive forms of escape, the district court properly concluded that a conviction under that statute is not a categorical crime of violence.

The panel applied *Descamps v. United States*, 133 S. Ct. 2276 (2013), which was decided after sentencing in this case, to address whether the modified categorical approach can be applied to determine whether the defendant's conviction qualifies as a crime of violence. The panel assumed, without deciding, that § 710-1021 is, as agreed by the parties, divisible into three separate crimes. The panel also accepted, as the parties agreed, that application of the modified categorical approach demonstrates that the defendant was convicted of the "escape from custody" version of the crime.

The panel rejected the government's argument that escape from custody may be further subdivided into three additional, distinct offenses. Comparing the elements of the crime of conviction with the elements of the generic crime, the panel

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that the crime of escape from custody is not a crime of violence under § 4B1.1(a) because it does not have as an element the use, attempted use, or threatened use of force; it is not burglary, arson, or extortion; it does not involve the use of explosives; it does not present a serious potential risk of physical injury to another; and the risk involved in the offense is not roughly similar, in kind or in degree of risk posed, to any of the enumerated offenses set forth in U.S.S.G. § 4B1.2(a).

## COUNSEL

Peter C. Wolff, Jr. (argued), Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Florence T. Nakakuni, United States Attorney, Jonathan M. F. Loo (argued), Assistant U.S. Attorney, Honolulu, Hawaii, for plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge:

Appellant Jordan Simmons ("Simmons") appeals from the judgment of the district court sentencing him to 168 months' imprisonment. He contends that the district court erred in sentencing him as a career offender because it erroneously concluded that his prior conviction for second degree escape in violation of Hawaii Revised Statutes § 710-1021 was a "crime of violence" as that term is defined by U.S. Sentencing Guidelines ("Sentencing Guidelines" or

"U.S.S.G.") § 4B1.1(a).  We agree.  We therefore vacate Simmons' sentence and remand for resentencing.

## I.

Simmons pleaded guilty, without a plea agreement, to six drug and firearm offenses.  He was sentenced to 204 months' imprisonment, followed by four years of supervised release.[1] Simmons' sentence was based, in part, on the district court's determination that Simmons was a "career offender" under U.S.S.G. § 4B1.1(a).  Application of the career offender guidelines raised Simmons' criminal history category from category III to category VI, which increased his advisory Guidelines sentencing range from 135–168 months' imprisonment to 188–235 months' imprisonment.

U.S.S.G. § 4B1.1 provides, in relevant part, that "[a] defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a). Simmons had previously been convicted in Hawaii state court of one count of second degree assault, in violation of Hawaii Revised Statutes § 707-711, and one count of second degree escape, in violation of Hawaii Revised Statutes § 710-1021. The district court concluded that both prior convictions were "crimes of violence" under § 4B1.1(a).  Simmons timely

---

[1] This sentence was subsequently reduced to 168 months' imprisonment pursuant to the government's motion under Fed. R. Crim. P. 35(b), based on Simmons' substantial assistance in the prosecution of another.  This sentence reduction does not affect our analysis of the issue before us.

appealed, asserting that his second degree escape conviction is not a "crime of violence."[2]

## II.

We review *de novo* a district court's determinations under the Sentencing Guidelines, including the district court's assessment of whether a prior conviction qualifies as a "crime of violence." *See United States v. Gomez*, 757 F.3d 885, 891–92 (9th Cir. 2014).

## III.

28 U.S.C. § 994(h) "directs the [Sentencing] Commission to 'assure' that the guidelines specify a sentence 'at or near' the statutory maximum" for career offenders. *United States v. Stewart*, 761 F.3d 993, 996 (9th Cir. 2014) (quoting 28 U.S.C. § 994(h)). "Carrying out this mandate, the Commission promulgated the career offender guidelines, which categorize an adult defendant as a 'career offender' when the defendant (1) is convicted of 'a felony that is either a crime of violence or a controlled substance offense' and (2) 'has at least two prior felony convictions of either a crime of violence or a controlled substance offense.'" *Id.* at 996–97 (quoting U.S.S.G. § 4B1.1(a)).

To determine whether a "prior felony conviction" qualifies as a crime of violence under § 4B1.1(a), we apply "the 'categorical approach' and 'modified categorical approach' set forth in *Taylor v. United States*, 495 U.S. 575 (1990)." *United States v. Lee*, 704 F.3d 785, 788 (9th Cir.

---

[2] Simmons does not dispute that his second degree assault conviction is a crime of violence.

2012). Under this approach, "we look only to the statute of conviction," and "compare the elements of the statutory definition of the crime of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *Id.* (citation and internal quotation marks omitted). "If the statute of conviction 'sweeps more broadly than the generic crime, a conviction under that law cannot count as a qualifying predicate, even if the defendant actually committed the offense in its generic form.'" *United States v. Caceres-Olla*, 738 F.3d 1051, 1054 (9th Cir. 2013) (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (brackets omitted)). If the statute of conviction is not a categorical crime of violence, sentencing courts may, in a "narrow range of cases," apply the "modified categorical approach," and "look beyond the statutory elements to the charging paper and jury instructions to determine whether the defendant's conviction necessarily involved facts corresponding to the generic federal offense." *Id.* at 1054 n.2 (quoting *Descamps*, 133 S. Ct. at 2283–84) (internal quotation marks omitted)).

## A.

Because § 710-1021 includes both active and passive forms of escape, the district court properly concluded that a conviction under that statute is not a categorical crime of violence. *See Chambers v. United States*, 555 U.S. 122, 126–27 (2009).[3] It then proceeded to apply the modified

---

[3] Although *Chambers* considered whether a defendant's prior crime of conviction was a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), we make no distinction between the terms "violent felony," as that term is defined in the ACCA, and "crime of

categorical approach and, after reviewing Simmons' state court plea colloquy (among other documents), concluded that Simmons' crime, *as committed*, constituted a crime of violence. Specifically, the district court relied upon Simmons' admission that he "ran away from a police car" to conclude that this prior offense created a serious risk of injury; therefore, that it was a crime of violence under the modified categorical approach.

At the time of Simmons' sentencing, the district court's application of the modified categorical approach was correct under our then-controlling decision, *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), *abrogated by Descamps*, 133 S. Ct. at 2286–91. In *Aguila-Montes de Oca*, we held that, in applying the modified categorical approach, sentencing courts may "look beyond the statute of conviction to determine whether the facts proven at trial or admitted by the defendant as part of his guilty plea establish that the defendant was convicted of all of the elements of the relevant federal generic offense." *Sanchez-Avalos v. Holder*, 693 F.3d 1011, 1014–15 (9th Cir. 2012) (citing *Aguila-Montes de Oca*, 655 F.3d at 921). If the prior conviction "necessarily rested" on certain facts, and those facts "satisf[ied] the elements of the generic offense," then the prior conviction was a qualifying offense. *Aguila-Montes de Oca*, 655 F.3d at 936. The district court applied this methodology here because Simmons' prior conviction "necessarily rested" on his escape from a police car, and

---

violence," as that term is defined in the Sentencing Guidelines. *See United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010). Cases addressing the ACCA's violent felony provision are, therefore, relevant to assessing whether a crime qualifies as a crime of violence under the Sentencing Guidelines. *See id.*

because the act of escaping from a police car satisfied the generic definition of a "crime of violence" under *Aguila-Montes de Oca*, the district court held that Simmons' second degree escape conviction was a crime of violence under U.S.S.G. § 4B1.1(a).

As part of our decision in *Aguila-Montes de Oca*, we concluded that the modified categorical approach applied not only to "divisible" statutes – that is, statutes that "list[] multiple, alternative elements, and so effectively create[] several different . . . crimes," *Descamps*, 133 S. Ct. at 2285 (citation and internal quotation marks omitted) – but also to "indivisible" statutes – that is, statutes that set forth "a single, indivisible set of elements," *id.* at 2286. *Aguila-Montes de Oca*, 655 F.3d at 926. We reasoned that "[t]he only conceptual difference between a divisible statute and a non-divisible statute is that the former creates an *explicitly* finite list of possible means of commission, while the latter creates an *implied* list of every means of commission that otherwise fits the definition of a given crime." *Aguila-Montes de Oca*, 655 F.3d at 927. To illustrate our point, we provided the following example: "[A] statute that requires use of a 'weapon' is not meaningfully different from a statute that simply lists every kind of weapon in existence. Using the word 'weapon' as an element is not analytically different from creating a list of all conceivable weapons ('gun, axe, sword, baton, slingshot, knife, machete, bat,' and so on)." *Id.*

After Simmons was sentenced, however, the Supreme Court abrogated this approach in *Descamps*. There, the Court clarified that the modified categorical approach could only be employed if the statute of conviction was divisible, and that the modified categorical approach had "no role to play" for indivisible statutes. 133 S. Ct. at 2285. The modified

categorical approach could only be applied to divisible statutes, the Court held, because it was an "elements-based inquiry." *Id.* at 2287. As the Court explained, "when a state statute punishes a broader range of conduct than a federal, generic crime, 'only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime.'" *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014) (quoting *Descamps*, 133 S. Ct. at 2290). "That is because 'a prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2290 (brackets omitted)).

By contrast, a conviction of an indivisible statute carries no such requirement of jury unanimity. *See id.* ("While the jury faced with a divisible statute must unanimously agree on the particular offense of which the petitioner has been convicted (and thus, the alternative element), the opposite is true of indivisible statutes; the jury need not so agree."). Thus, our conclusion that "a statute that requires use of a 'weapon' is not meaningfully different from a statute that simply lists every kind of weapon in existence," *Aguila-Montes de Oca*, 655 F.3d at 927, was incorrect. As the Supreme Court explained: "As long as the statute itself requires only an indeterminate 'weapon,' that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention. And, most important, that is all the jury must find to convict the defendant." *Descamps*, 133 S. Ct. at 2290. Moreover, "even if in many cases, the jury could have readily reached consensus on the weapon used, a later sentencing court

cannot supply the missing judgment." *Id.* As we have subsequently observed:

> *Descamps* held that indivisible statutes are indivisible precisely because the jury need not agree on anything past the fact that the statute was violated. As long as the defendant's conduct violates the statute, the jury can disagree as to how, and a later sentencing court cannot conclude that the jury in fact agreed on the particular means of commission.

*Rendon*, 764 F.3d at 1085.

Properly understood, then, the purpose of the modified categorical approach is *not* to determine – as the district court did here – whether a crime *as committed* constitutes a crime of violence, but rather "to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." *Descamps*, 133 S. Ct. at 2285. If the statute under which the defendant is convicted is divisible, the modified categorical approach permits sentencing courts to consult a limited set of documents (including the charging documents and jury instructions) to determine which alternative form of the offense the defendant committed. *Id.* at 2281. Once this analysis is complete, the sentencing court "can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.* "If the elements of the statutory alternative under which the defendant was convicted are broader than the generic crime, the prior conviction 'cannot count as a qualifying predicate.'" *United States v.*

*Quintero-Junco*, 754 F.3d 746, 751 (9th Cir. 2014) (quoting *Descamps*, 133 S. Ct. at 2283 (brackets omitted)).

## B.

The parties agree that the district court's approach was erroneous in light of *Descamps*. They disagree, however, whether, after *Descamps*, Simmons' second degree escape conviction qualifies as a crime of violence under the modified categorical approach. Because we may "affirm the district court's sentencing decision on any basis supported by the record," *United States v. Polanco*, 93 F.3d 555, 566 (9th Cir. 1996), we must address whether, after *Descamps*, the modified categorical approach can be applied to Hawaii Revised Statutes § 710-1021 in order to determine whether it qualifies as a "crime of violence" under U.S.S.G. § 4B1.1(a).

## 1.

Section 710-1021 provides, in relevant part, that "[a] person commits the offense of escape in the second degree if the person intentionally escapes from a correctional or detention facility or from custody." Haw. Rev. Stat. § 710-1021(1). The parties agree that the statute is divisible into three distinct offenses: (1) escape from a correctional facility; (2) escape from a detention facility; and, (3) escape from custody. The parties further agree that, when the statute is so subdivided, Simmons was convicted of the third version: escape from custody. Because, as we discuss below, the crime of escape from custody is not a crime of violence under § 4B1.1(a), we assume, without deciding, that § 710-1021 is divisible into the three crimes agreed upon by the parties.

Perhaps anticipating our conclusion that the crime of escape from custody does not qualify as a crime of violence under § 4B1.1(a), the government argues that escape from custody may be further subdivided into three additional, distinct offenses. The government points to Hawaii Revised Statutes § 710-1000(3), which defines "custody" as "restraint by a public servant pursuant to arrest, detention, *or* order of a court." Haw. Rev. Stat. § 710-1000(3) (emphasis added). Relying on this definition, the government argues that the crime of escape from custody can be further subdivided into three separate crimes: (1) escape from restraint by a public servant pursuant to arrest; (2) escape from detention; and (3) escape from order of a court.

We find this argument unavailing. Indeed, we recently rejected an almost identical argument in *United States v. Cabrera-Gutierrez*, 756 F.3d 1125 (9th Cir. 2014) *as amended*. In *Cabrera-Gutierrez*, we considered whether an Oregon sexual abuse statute was divisible. *Id.* at 1135. The statute at issue provided that a person commits sexual abuse in the second degree "when that person subjects another person to [certain sexual acts] and the victim does not consent thereto." *Id.* at 1133 (quoting Or. Rev. Stat. § 163.425). The government there asserted that the statute was divisible because another section of the state's criminal code listed four types of legal incapacity to consent. *See id.* at 1135 (citing Or. Rev. Stat. § 163.315). According to the government, "the listing of several alternative modes of non-consent in Or. Rev. Stat. § 163.315 render[ed] Or. Rev. Stat. § 163.425 divisible." *Id.* (internal quotation marks omitted).

We rejected this contention "for the simple reason that [the defendant] was convicted of violating § 163.425, not § 163.315." *Id.* We explained that, "under *Descamps*, what

must be divisible are the elements of the crime, not the mode or means of proving an element," *id.* at 1137 n.16, and that, "[t]o constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense that must be proved by the prosecution *in every case* to sustain a conviction under a given statute." *Id.* at 1135 (quoting *United States v. Beltran-Munguia*, 489 F.3d 1042, 1045 (9th Cir. 2007) (internal quotation marks and brackets omitted)). Because, under Oregon law, none of the four modes set forth in § 163.315 needed to be proven in order to sustain a conviction under § 163.425, none was an element of the crime of sexual assault. *Id.* Accordingly, we concluded that § 163.425 was not divisible. *Id.*

Here, as in *Cabrera-Gutierrez*, we reject the government's argument for the simple reason that Simmons was convicted for violating § 710-1021, not § 710-1000(3). There is no support for the government's argument that § 710-1000(3) sets forth "elements" that the prosecution must prove in order to sustain a conviction under § 710-1021: Hawaii law makes clear that none of the three "modes" of custody set forth in § 710-1000(3) needs to be proven in order to convict a defendant of second degree escape. *See, e.g.*, *State v. Smith*, 583 P.2d 337, 343 (Haw. 1978) (concluding that the custody element of escape was satisfied when the defendant was released on furlough and legally bound by the restrictions of the furlough). Accordingly, none of the modes of custody set forth in § 710-1000(3) is an element of the crime of escape from custody. *See Cabrera-Gutierrez*, 756 F.3d at 1135.

Moreover, the government's position is directly contrary to the Supreme Court's reasoning in *Descamps*. Under Hawaii law, the only thing that a "jury must find to convict

the defendant" of second degree escape is that the defendant was in custody. *Descamps*, 133 S. Ct. at 2290. Hawaii "juries are not instructed that they must agree unanimously and beyond a reasonable doubt on whether the defendant" escaped from restraint by a public servant pursuant to arrest, detention, *or* order of a court; "rather, it is enough that each juror agree only that one of the [three] occurred, without settling on which." *Rendon*, 764 F.3d at 1087 (quoting *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (internal quotation marks omitted)); *see State v. Nakoa*, 817 P.2d 1060, 1065 (Haw. 1991) (affirming a trial court's use of a jury instruction that read, "[u]nder our law 'custody' means restraint by a public servant pursuant to arrest *or* detention." (emphasis added)). Because § 710-1021 "requires the jury to find only" that the defendant was in custody, the "jurors need not all agree on whether the defendant" was being restrained pursuant to arrest, detention, order of a court, or some other form of custody. *Descamps*, 133 S. Ct. at 2290. And, because the jury need not find "unanimously and beyond a reasonable doubt" which mode of custody a defendant escaped in order to sustain a conviction under § 710-1021, under *Descamps*, the crime of "escape from custody" is not divisible. *Id.*

In sum, while we accept the parties' agreement that § 710-1021 is divisible into three separate crimes, we reject the government's entreaty further to subdivide the crime of "escape from custody." To do so would violate both the holding and reasoning of *Descamps*.

**2.**

Although we reject the government's argument that the crime of "escape from custody" is divisible, our inquiry is not

at its end. As we noted above, the parties agree, and we accept, that § 710-1021 is divisible into three distinct offenses (escape from a correctional facility, escape from a detention facility, and escape from custody). Moreover, the parties agree, and we accept, that application of the modified categorical approach demonstrates that Simmons was convicted of the "escape from custody" version of the crime. In order to determine whether the crime of "escape from custody" is a "crime of violence" as that term is defined in § 4B1.1(a), we must now "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281.

An offense is a "crime of violence" under the Sentencing Guidelines if it is "punishable by imprisonment for a term exceeding one year" and is an offense that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The offense of escape from custody does not have as an element the use, attempted use, or threatened use of force; it is not burglary, arson, or extortion; and it does not involve the use of explosives. *See* Haw. Rev. Stat. § 710-1021. Thus, the crime of escape from custody can

qualify as a crime of violence only if it falls into the last clause – the so-called "residual" or "catchall" provision – of U.S.S.G. § 4B1.2(a)(2). *See United States v. Piccolo*, 441 F.3d 1084, 1086 (9th Cir. 2006).

To qualify as a crime of violence under the residual clause of § 4B1.2(a), two criteria must be satisfied. "First, the 'conduct encompassed by the elements of the offense, in the ordinary case,' must 'present[] a serious potential risk of physical injury to another.'" *United States v. Park*, 649 F.3d 1175, 1177–78 (9th Cir. 2011) (quoting *James v. United States*, 550 U.S. 192, 208 (2007)) (alteration in original). Second, the prior offense must be "'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause – burglary of a dwelling, arson, extortion, and crimes involving explosives." *Id.* at 1178 (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). The crime of escape from custody satisfies neither criterion.

First, the crime of escape from custody does not "present a serious potential risk of [physical] injury to another." *James*, 550 U.S. at 208. In order to sustain an escape from custody conviction, the prosecution must prove two elements beyond a reasonable doubt: first, that the defendant escaped from custody; and second, that he or she did so intentionally. Haw. Crim. Jury Instr. § 12.04; *see also* Haw. Rev. Stat. § 710-1021; *Smith*, 583 P.2d at 342. Proving that a defendant "escape[d] from custody" "does not require proof of any actual or potential risk of harm to others for a conviction." *United States v. Jennings*, 515 F.3d 980, 992 (9th Cir. 2008). State law makes clear that a defendant may violate § 710-1021 in a way that poses *no* risk of physical injury to others. *See Smith*, 583 P.2d at 342. For example, a defendant may be

convicted of escape from custody based on his "intentional failure to return to physical confinement." *Id.*; *see also id.* at 340 (affirming a defendant's conviction for escape from custody when he left the youth correctional facility at which he was confined on a pass that allowed him to remain off the facility from 8 a.m. to 7 p.m. and did not return until 3:30 a.m.). Because Simmons "could have been convicted on the basis of conduct that did not present a serious potential risk of physical injury to another," his offense cannot be classified as a "crime of violence." *United States v. Kelly*, 422 F.3d 889, 893 (9th Cir. 2005); *see also Chambers*, 555 U.S. at 127–30 (noting that failure to report is not a violent felony under the ACCA because it does not involve the risk of physical harm inherent in active escapes); *Piccolo*, 441 F.3d at 1089–90 (holding that escape is not categorically a crime of violence because it can be effectuated in ways that do not pose a danger to others, such as failure-to-report).

Moreover, the risk involved in the offense of escape from custody is not roughly similar, in kind or in degree of risk posed, to any of the enumerated offenses set forth in U.S.S.G. § 4B1.2(a). *See Park*, 649 F.3d at 1178. First, the risk involved in the crime of escape from custody is not similar in kind to burglary, arson, extortion, or the use of explosives. Unlike arson or the use of explosives, the crime of escape from custody does not necessarily involve the "intentional release of a destructive force dangerous to others." *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011). Unlike burglary, the crime of escape from custody does not involve the "invasion of victims' homes or workplaces" and the attendant risks of confrontation that inhere in those invasions. *See James*, 550 U.S. at 225–26 (quoting *Taylor*, 495 U.S. at 581); *see also United States v. Chandler*, 743 F.3d 648, 654 (9th Cir. 2014) ("The real danger of burglary, like robbery, is 'the

possibility of a face-to-face confrontation' with the victim or an intervener." (quoting *James*, 660 U.S. at 203)). Finally, unlike extortion, the crime of escape from custody does not include "the wrongful use of force, fear, or threats." *Chandler*, 743 F.3d at 654 (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003)). Accordingly, the crime of escape from custody is not similar in kind to any of the enumerated offenses.

Nor does the crime of escape from custody pose a similar degree of risk as those crimes enumerated in § 4B1.2(a). As noted above, escape from custody can be completed in a manner that poses *no* risk of physical injury to others. *See Smith*, 583 P.2d at 342. Escaping from custody does not inherently involve risk to another or, in the ordinary course, present such a risk. *See Piccolo*, 441 F.3d at 1089–90. The same cannot be said of the enumerated offenses. *See United States v. Spencer*, 724 F.3d 1133, 1140–41 (9th Cir. 2013) (recognizing that the enumerated offenses involve a substantial risk of causing physical injury to another); *United States v. Mayer*, 560 F.3d 948, 960 (9th Cir. 2009) (noting that "Congress singled out the enumerated offenses because . . . they often created a significant risk of bodily injury"). Because the risk involved in committing the crime of escape from custody is less than the risk involved in any of the offenses enumerated in § 4B1.2, it is not a crime of violence. *See James*, 550 U.S. at 203 (noting that the enumerated offenses serve as a baseline for assessing whether a crime presents a serious risk of physical injury to another).

## IV.

We conclude that the district court erred in holding that Simmons' conviction under Hawaii Revised Statutes § 710-

1021 is a "crime of violence" for purposes of U.S.S.G. § 4B1.1(a). Accordingly, we vacate Simmons' sentence and remand for resentencing.

**VACATED and REMANDED.**