**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KEVIN TERRELL PETERSON,
*Defendant-Appellant.*

No. 17-30084

D.C. No.
2:16-cr-00150-RSL-1

OPINION

Appeal from the United States District Court
Western District of Washington
Robert S. Lasnik, Senior District Judge, Presiding

Argued and Submitted June 15, 2018
Seattle, Washington

Filed September 4, 2018

Before: Milan D. Smith, Jr., and Paul J. Watford, Circuit
Judges, and Douglas L. Rayes,[*] District Judge.

Opinion by Judge Rayes

---

   [*] The Honorable Douglas L. Rayes, United States District Judge for
the District of Arizona, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress, vacated a sentence, and remanded for resentencing in a case in which the defendant was convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The panel held that in denying the defendant's motion to suppress the handgun found in his backpack, the district court properly concluded that the handgun inevitably would have been discovered in an inventory search at the time of booking. The panel wrote that had the officers arrested the defendant only on misdemeanor warrants, and had they complied with Revised Code of Washington § 10.31.030, the defendant would have been able to post bail, thereby avoiding the booking and inventory search altogether. But because the officers would have booked the defendant on obstruction or resisting arrest charges absent discovery of the gun, and because bail had not yet been set on those charges, the defendant would have been taken into custody upon booking, and his possessions would have been inventoried at that time.

The panel held that the district court erred in treating the defendant's first-degree robbery conviction under Revised Code of Washington § 9A.56.190 as a crime of violence under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2. The panel

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

rejected the government's argument that Washington first-degree robbery is a categorical match for the offenses of robbery and extortion enumerated in § 4B1.2(a)(2). The panel explained that because Washington robbery encompasses threats to property, it does not fall categorically within generic robbery; and that under a definition of "extortion" added to § 4B1.2's commentary in 2016, Washington's robbery statute is not a categorical match because it allows for a conviction to rest on fear of injury to property alone.

The panel held that the district court did not abuse its discretion in applying a two-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2 because the defendant's actions reasonably can be construed as being "in preparation of flight," and because these actions reasonably could be viewed as presenting a substantial risk of harm to the officers and others on the interstate.

## COUNSEL

Jesse Cantor (argued) and Ann K. Wagner, Assistant Federal Public Defenders; Office of the Federal Public Defender, Seattle, Washington; for Defendant-Appellant.

Charlene Koski (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

## OPINION

RAYES, District Judge:

Defendant-Appellant Kevin Peterson appeals the district court's denial of his motion to suppress the handgun found in his backpack. The district court concluded that the evidence inevitably would have been discovered in an inventory search. We affirm the order.

Peterson also challenges his sentence of 48 months' imprisonment imposed for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court concluded that Peterson's prior conviction for first-degree robbery was a "crime of violence" as that term is defined by U.S. Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") section 4B1.2(a) which, along with a prior controlled substance offense, increased his base offense level to 24 under U.S.S.G. section 2K2.1(a)(2). The district court also concluded that his conduct warranted a two-level enhancement under U.S.S.G. section 3C1.2 for reckless endangerment during flight. Finding that Peterson's prior conviction for first-degree robbery was not a "crime of violence," we affirm in part and reverse in part. Accordingly, Peterson's sentence is vacated, and this matter remanded for resentencing.

## I.  Background

On August 14, 2015, King County police officers arrested Peterson on outstanding warrants. At the time of the arrest, the arresting officer instructed Peterson to remove his backpack so that he could be handcuffed. The officer waited to search the backpack until after he had handcuffed and secured Peterson in the back of the patrol car. Upon opening the backpack, the officer discovered a handgun, which

officers on the scene soon determined was stolen. The officers informed Peterson of additional charges for possession of the firearm, and then transported him to King County Jail, where Peterson was booked on charges of unlawful possession of a firearm and possession of a stolen firearm, both felony offenses.

After indictment for being a felon in possession of a firearm, Peterson filed a motion to suppress evidence of the handgun discovered in his backpack. The district court denied the motion, finding that the gun inevitably would have been discovered during an inventory search of the backpack during Peterson's booking.

On January 19, 2017, at the close of a stipulated-facts bench trial, the district court found Peterson guilty of being a felon in possession of a firearm. Before sentencing, the United States Probation Office submitted a Presentence Report and a Sentencing Recommendation. The Probation Officer's calculation of Peterson's base offense level incorporated, among other things, a finding that Peterson's prior Washington state felony conviction for first-degree robbery constituted a crime of violence under the Guidelines, and a two-level enhancement for reckless endangerment during flight.

Peterson objected to the sentencing recommendations, but the district court overruled his objections and applied the recommended base offense level. Peterson timely appealed the district court's denial of his motion to suppress and its application of sentencing enhancements under sections 2K2.1(a)(2) and 3C1.2.

## II. Discussion

Peterson raises several arguments on appeal. First, he claims that the district court erred in denying his motion to suppress because the inevitable discovery exception to the exclusionary rule is inapplicable. Second, Peterson challenges his sentence, arguing that the district court improperly found his first-degree robbery conviction constituted a crime of violence under sections 2K2.1(a)(2) and 4B1.2, and in applying a two-level enhancement for reckless endangerment during flight under section 3C1.2. We address each of these claims in turn.

### A. Motion to Suppress

"We review *de novo* motions to suppress, and any factual findings made at the suppression hearing for clear error." *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992). "[I]nevitable discovery rulings are mixed questions [of law and fact] that . . . should be reviewed under a clearly erroneous standard." *United States v. Lang*, 149 F.3d 1044, 1047 (9th Cir. 1998).

The exclusionary rule allows courts to suppress evidence obtained as a result of an unconstitutional search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 655–66 (1961). The exclusionary rule does not apply, however, if the government establishes by a preponderance of the evidence that the unlawfully obtained information "ultimately or inevitably would have been discovered by lawful means[.]" *Nix v. Williams*, 467 U.S. 431, 444 (1984); *see also United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (holding that potentially unconstitutional search incident to arrest did not warrant application of the exclusionary rule because police would have found the evidence while taking inventory of the defendant's belongings during booking).

Here, the district court found that, under the circumstances, the warrantless search of Peterson's backpack was not justified as a search incident to arrest, but that the evidence nonetheless was not subject to exclusion because it inevitably would have been discovered during an inventory search at the time of booking.  Specifically, the district court found that "even if the deputies had not searched [Peterson's] backpack, they would have had cause to book him for something more serious than the warrants: obstructing a law enforcement officer or resisting arrest . . . ."

On appeal, the government contends that the handgun discovered in Peterson's backpack inevitably would have been discovered during the inventory search, but also argues the search was a proper search incident to arrest.  For purposes of this decision, we will assume that the district court properly found that the warrantless search of Peterson's backpack was not justified as a search incident to arrest.  We affirm because the district court properly applied the inevitable discovery rule.

"[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983); *see also United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000) (noting that courts should consider state law in addition to any local police department policies when determining lawfulness of inventory search conducted by state or local police officers).  Peterson does not dispute that, if he were booked, his backpack would inevitably have been

subject to an inventory search.[1]  Instead, he contends that the discovery of the handgun was not inevitable because, but for the illegal search of his backpack at the time of his arrest, the officers would have had cause to book him only on his misdemeanor warrants, for which he would have posted bail and avoided the inventory search altogether.

We agree that the evidence suggests that Peterson's backpack would not have been subject to an inventory search had he been arrested only for his misdemeanor warrants. Under Washington law, arrestees capable of posting bail may avoid incarceration. *See State v. Smith*, 783 P.2d 95, 98 (Wash. Ct. App. 1989).   Revised Code of Washington section 10.31.030 provides that, when someone is arrested under the authority of a warrant, the arresting officer must provide the arrestee with notice of the charge and the amount of bail set by the warrant.  *Smith*, 783 P.2d at 98.  An inventory search conducted before an arrestee is provided

---

[1] The officers testified that Peterson's backpack would have been searched during the booking process, written policies supported their testimony, and the policies were sufficiently detailed regarding the situation at hand.  For instance, Sergeant Michael Allen of the King County Jail testified that the arresting agency takes custody of backpacks because the jail does not accept backpacks from arrestees awaiting booking.  Consistent with this testimony, section 5.05.001 of King County Jail's General Policy Manual states that intake officers at the county jail shall "[s]creen all property upon receipt from the outside agencies" and "return oversized items," like backpacks to the transporting officer for return "to their department's safe keeping area." Detective Clayton Minshull of the King County Sheriff's Office testified that, in such situations, the arresting officer conducts an inventory search to determine whether an item contains perishables, contraband, or valuables and places the backpack into evidence for safekeeping. Minshull's testimony is supported by section 8.05.000 of the General Orders Manual for the King County Sheriff's Office, which provides that, "[i]tems not accepted by the jail should be inspected by the deputy prior to booking."

the information required by section 10.31.030 is unlawful. *Id.*; *see also State v. Caldera*, 929 P.2d 482, 483–84 (Wash. Ct. App. 1997) (holding inventory searches unlawful when conducted prior to providing arrestees the opportunity to post bail as required by section 10.31.030).

Here, no arresting officer advised Peterson of the amount of bail for his misdemeanor warrants, which was set at $135,000. Peterson presented sufficient evidence of his ability to post a bail bond in that amount. Accordingly, had the officers arrested Peterson only on the misdemeanor warrants, and had they complied with section 10.31.030, Peterson would have been able to post bail, thereby avoiding the booking and inventory search process altogether.

Peterson's ability to post bail on the misdemeanor warrants, however, has no bearing on whether his backpack would have been subject to an inventory search had he been booked on charges of obstructing law enforcement officers or resisting arrest because bail had not yet been set on those charges at the time Peterson was booked. The district court credited the arresting officer's testimony that he "absolutely" would have booked Peterson on obstruction of law enforcement officers and resisting arrest charges had he not searched the backpack and discovered the handgun. During the arrest, Peterson twice broke away from officers and tried to escape on foot. Although Peterson was not charged with these crimes at booking, the district court credited officer testimony that it was standard practice to book arrestees only on felony charges when both felony and misdemeanor charges are available. Because the officers would have booked Peterson on obstruction or resisting arrest charges absent discovery of the gun, and because bail had not yet been set on those charges, Peterson would have been taken into custody upon booking. The evidence

demonstrates that it is standard procedure to inventory a defendant's possessions at the time of booking if the King County jail will not accept the item and the arrestee will be taken into custody. The district court did not err in denying Peterson's motion to suppress because the handgun inevitably would have been discovered.

**B. Crime of Violence Sentencing Enhancement**

Peterson was found guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Under the Sentencing Guidelines, the base offense level for that offense varies depending on whether the defendant has one or more prior felony convictions for a "crime of violence" or a controlled substance offense. U.S. Sentencing Comm'n, *Guidelines Manual*, § 2K2.1(a) (Nov. 2015). The district court determined that Peterson had two such convictions under Washington law: (1) first-degree robbery and (2) delivery of cocaine. On appeal, Peterson challenges only whether his first-degree robbery conviction constitutes a "crime of violence."

We review de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Robinson*, 869 F.3d 933, 936 (9th Cir. 2017). To determine whether a prior felony conviction qualifies as a "crime of violence" under section 4B1.1(a), we use the "categorical approach," under which "'we look only to the statute of conviction,' and 'compare the elements of the statutory definition of the crime of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition.'" *United States v. Simmons*, 782 F.3d 510, 513 (9th Cir. 2015) (quoting *United States v. Lee*, 704 F.3d 785, 788 (9th Cir. 2012)). Stated differently, the sentencing enhancement is prohibited if the scope of conduct covered by Washington first-degree

robbery is broader than the federal definition, even if the conduct that led to the defendant's prior conviction was, in fact, violent. *See Taylor v. United States*, 495 U.S. 575, 600 (1990).

At the time of Peterson's sentencing, the Sentencing Guidelines defined the term "crime of violence" as follows:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). The first clause of this definition commonly is referred to as the "elements clause," and the second as the "enumerated offenses" clause. Although an offense qualifies as a "crime of violence" if it is covered by either clause, we focus on the enumerated offenses clause because the government contends only that Washington's first-degree robbery constitutes a "crime of violence" under section 4B1.2(a)(2).[2] In particular, the government argues

---

[2] Peterson argues in his opening brief that neither section 4B1.2(a)(1) nor section 4B1.2(a)(2) applies to his first-degree robbery

that Washington first-degree robbery is a categorical match for the enumerated offenses of robbery and extortion.

"Robbery" is an enumerated offense that constitutes a crime of violence. But the Sentencing Guidelines refer only to "generic" robbery, which has been defined as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the *person*." *United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (quoting *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006)). "Generic robbery requires danger to the person, not merely danger to property." *United States v. Edling*, 895 F.3d 1153, 1157 (9th Cir. 2018).

Peterson was convicted of robbery under Revised Code of Washington section 9A.56.190, which states:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of

---

conviction. Because the government has not responded to Peterson's section 4B1.2(a)(1) argument, it has waived reliance on the elements clause. *See, e.g.*, *United States v. Castillo-Marin*, 684 F.3d 914, 919 (9th Cir. 2012) (noting that the government waives an argument when it does not make that argument at the time it filed its answering brief). Notwithstanding the government's waiver, we have serious doubts that Washington first-degree robbery is a categorical match under the elements clause because Washington's robbery offense includes force directed at property, which is not covered in the elements clause. *See United States v. Edling*, 895 F.3d 1153, 1157 (9th Cir. 2018).

> injury to that person *or his or her property* or
> the person or property of anyone.

*Id.* (emphasis added). Because Washington robbery encompasses threats to property and generic robbery excludes threats that are limited to property, the minimum conduct necessary to constitute Washington robbery does not fall categorically within generic robbery. *See Edling*, 895 F.3d at 1157 ("[B]y allowing a conviction to rest on fear of injury to property alone, [the State's] robbery statute is not a categorical match for generic robbery."); *United States v. Bercier*, 192 F. Supp. 3d 1142, 1151 (E.D. Wash. 2016) (finding that because Washington second-degree robbery criminalizes physical force against property it is overbroad and not a categorical match for generic robbery).

The enumerated offenses clause also lists "extortion" among the offenses that constitute a crime of violence. In 2016, before Peterson was sentenced, the Sentencing Commission ("Commission") added for the first time a specific definition of "extortion" to section 4B1.2's commentary, which provides: "'Extortion' is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2 cmt. n.1; U.S.S.G. Supp. to App. C, Amend. 798 at 131 (2016). "[T]he Guidelines' new definition of extortion narrows the offense by requiring that the wrongful use of force, fear, or threats be directed against the person of another, not property." *Edling*, 895 F.3d at 1157; *see United States v. Bankston*, — F.3d — , 2018 WL 4016853, at *3 (9th Cir. Aug. 23, 2018) (holding that California robbery is "no longer a categorical match" under the new definition). Washington's robbery statute therefore is not a categorical match because it allows for a conviction to rest on fear of injury to property alone.

In sum, Washington first-degree robbery is not a categorical match under the enumerated offenses clause of section 4B1.2(a)(2). We therefore find that the district court erred in treating Peterson's first-degree robbery conviction as a crime of violence.

## C. Reckless Endangerment During Flight Sentencing Enhancement

The district court did not abuse its discretion in applying a two-level enhancement for reckless endangerment during flight under section 3C1.2 when calculating Peterson's guidelines range. *See United States v. Reyes-Oseguera*, 106 F.3d 1481, 1483 (9th Cir. 1997) ("We review the district court's application of the Sentencing Guidelines to the facts for an abuse of discretion."). This enhancement may be applied if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ." U.S.S.G. § 3C1.2. "During flight" is construed broadly, and includes conduct "in the course of fleeing," *id.*, in "preparation for flight," and "in the course of resisting arrest." U.S.S.G. § 3C1.2 cmt. n.3.

The district court found that Peterson's actions during transport to the jail were "very dangerous and created a substantial risk of harm" to the officers. Specifically, Peterson, who was in double restraints, began violently kicking the windows in the rear compartment of the patrol car. Peterson failed to heed commands to stop kicking and was pepper sprayed. This subdued him only temporarily, however, and he soon resumed violently kicking the rear windows. Fearing that Peterson would kick out the rear window and attempt to escape, thereby potentially causing a collision on the interstate, the officer moved across multiple lanes of traffic to pull off the interstate and reapply

Peterson's restraints.  We find that the district court did not abuse its discretion in applying the sentencing enhancement because Peterson's actions reasonably can be construed as being "in preparation of flight," and because these actions reasonably could be viewed as presenting a substantial risk of harm to the officers and others on the interstate.

## III.    Conclusion

For the foregoing reasons, we affirm the district court's denial of Peterson's motion to suppress, reverse the district court's finding that Washington first-degree robbery constitutes a crime of violence under sections 2K2.1(a)(2) and 4B1.2, and affirm the district court's application of a two-level enhancement for reckless endangerment during flight under section 3C1.2.  Accordingly, we vacate Peterson's sentence and remand for resentencing.

**AFFIRMED in part; REVERSED in part, and REMANDED.**