**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

FRANCISCA RODRIGUEZ-GAMBOA,
*Defendant-Appellee.*

No. 19-50014

D.C. No.
2:18-cr-00379-
ODW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 18, 2019
Pasadena, California

Filed December 27, 2019

Before: Kim McLane Wardlaw and Andrew D. Hurwitz,
Circuit Judges, and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Hurwitz

---

[*] The Honorable Joseph F. Bataillon, United States District Judge
for the District of Nebraska, sitting by designation.

# SUMMARY[**]

## Immigration

The panel affirmed the district court's order permitting the defendant to withdraw her guilty plea to illegal reentry under 8 U.S.C. § 1326, vacated the district court's dismissal of the indictment, and remanded to the district court for the limited purpose of resolving the factual issue of whether geometric isomers of methamphetamine exist.

The removal that served as the predicate for the defendant's § 1326 conviction was based on her prior conviction for possession of methamphetamine for sale in violation of California Health and Safety Code § 11378. Shortly after the defendant pleaded guilty to the § 1326 information, this court held in *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. 2018) (*Lorenzo I*), that the definition of methamphetamine applicable to convictions under § 11378 is broader than the definition of methamphetamine under the federal Controlled Substances Act. The district court granted the defendant's motion to withdraw her guilty plea and to dismiss the information in light of *Lorenzo I*.

The panel held that the district court did not abuse its discretion in allowing the defendant to withdraw her guilty plea following *Lorenzo I* because that decision effectively invalidated her underlying removal.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Following the defendant's withdrawal of her guilty plea and the dismissal of the information, this court withdrew the opinion in *Lorenzo I* and replaced it with a non-precedential memorandum disposition, *Lorenzo v. Whitaker*, 752 F. App'x 482 (9th Cir. 2019) (*Lorenzo II*). *Lorenzo II* expressly stated that the government is not foreclosed from raising in other cases the argument that any difference between California and federal law about the definition of methamphetamine is illusory.

The government argues that because both California and federal law prohibit possession for sale of methamphetamine and "its" isomers, they are identical, because the California statute is limited to those isomers of methamphetamine that actually exist and geometric isomers of methamphetamine do not. The panel declined the government's invitation to rewrite California law, whose statutory scheme strongly suggests that the California legislature deliberately distinguished between the various isomers of controlled substances and expressly noted when its definitions were conditioned on the existence of a particular isomer. But because whether geometric isomers of methamphetamine exist is a factual issue that has the potential to inform the panel's disposition of this appeal and future cases, and because the district court has never made a finding as to that factual issue, the panel remanded to the district court for the limited purpose of resolving that evidentiary issue in the first instance. The panel wrote that it will retain jurisdiction over the appeal and address its merits after the district court reports its factual findings.

## COUNSEL

L. Ashley Aull (argued), Chief, Criminal Appeals Section; Lawrence S. Middleton and Brandon D. Fox, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellant.

David Menninger (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellee.

## OPINION

HURWITZ, Circuit Judge:

We are asked to decide whether the definition of methamphetamine under California law is broader than the definition under corresponding federal law. The issue is pivotal in this case because appellee Francisca Rodriguez-Gamboa did not commit illegal reentry under 8 U.S.C. § 1326 if the California law is categorically broader than the federal one.

The case arrives in an unusual procedural posture. The parties agree that the relevant federal statute defines methamphetamine as including only its optical isomer, while California law defines methamphetamine as including its geometric and optical isomers. But the government contends that this apparent difference is illusory because there is no such thing as a geometric isomer of methamphetamine. And, the government presented expert declarations in support of its position below.

The district court, however, did not resolve whether a geometric isomer of methamphetamine exists. While this case was pending in the district court, we decided *Lorenzo v. Sessions* ("*Lorenzo I*"), holding that the definition of methamphetamine under California Health and Safety Code § 11378 was categorically broader than the definition of methamphetamine under the Controlled Substances Act, 21 U.S.C. § 812, because the former included geometric isomers and the latter did not. 902 F.3d 930, 932–38 (9th Cir. 2018). The district court, naturally feeling itself bound by *Lorenzo I*, allowed Rodriguez to withdraw her guilty plea to a violation of 8 U.S.C. § 1326 and dismissed the information. After the government filed a notice of appeal, however, we withdrew our opinion in *Lorenzo I*, *Lorenzo v. Whitaker*, 913 F.3d 930 (9th Cir. 2019), and replaced it with a non-precedential memorandum disposition, *Lorenzo v. Whitaker* ("*Lorenzo II*"), 752 F. App'x 482 (9th Cir. 2019).

*Lorenzo II* reached the same result as *Lorenzo I*, but expressly declined to address the factual argument raised here, because the government had raised it for the first time in a petition for panel rehearing. *Id.* at 485. The panel, however, "d[id] not foreclose the government from presenting its new argument or new evidence in another case." *Id.*

This is that case. But, because the district court did not confront the factual accuracy of the government's argument, we remand to the district court to address that issue in the first instance.

## FACTUAL BACKGROUND

In 2011, Rodriguez, a citizen of Mexico and an undocumented resident of the United States, was convicted of several offenses, including possession for sale of

methamphetamine in violation of California Health and Safety Code § 11378, and sentenced to six years' imprisonment. She later was served with a Notice of Intent to Issue a Final Administrative Removal Order ("NOI"). The NOI alleged that Rodriguez was removable because she had been "convicted of an aggravated felony," namely, "Possession for Sale of a Controlled Substance, to wit: Methamphetamine, in violation of Section 11378 of the Health and Safety Code of California."

Rodriguez admitted the allegations in the NOI and waived any right to remain in the United States while applying for judicial review. After serving her state sentence, she was removed to Mexico. She later reentered the United States without inspection.

## PROCEDURAL BACKGROUND

In 2018, Rodriguez was charged in a criminal complaint with illegal reentry in violation of 8 U.S.C. § 1326. She waived indictment and pleaded guilty to the information.

Shortly thereafter, *Lorenzo I* held that possession of methamphetamine for sale under California Health and Safety Code § 11378 "does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i)." 902 F.3d at 933. *Lorenzo I* found that "the definition of 'methamphetamine' applicable to convictions under California Health & Safety Code §§ 11378 and 11379(a) is broader than the definition of methamphetamine under the federal Controlled Substances Act, 21 U.S.C. § 812." *Id.* at 932. The opinion reasoned that because the definition of methamphetamine under California law includes both optical and geometric isomers, Cal. Health & Safety Code §§ 11033, 11055(d)(2), it is broader than the federal definition under the Controlled Substances Act, 21 U.S.C.

§§ 802(14), 812, which covers only the optical isomer.  *Id.* at 935–36.

Relying on *Lorenzo I*, Rodriguez moved under 8 U.S.C. § 1326(d) to withdraw her guilty plea and dismiss the information.  In opposition, the government argued that any apparent overbreadth of the California statute was illusory, because geometric isomers of methamphetamine do not in fact exist.  The government submitted declarations from two experts so opining.  Although the district court gave Rodriguez an opportunity to submit rebutting evidence, she declined to do so, asserting that "no evidence is necessary, because the Ninth Circuit already decided the issue in *Lorenzo*, which remains binding precedent."

Agreeing, the district court granted Rodriguez's motion to withdraw her guilty plea and dismissed the information. The court noted that geometric isomers of methamphetamine may not exist, but concluded that it did not have to decide the issue in light of *Lorenzo I.*  The government timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction of the government's appeal under 18 U.S.C § 3731 and 28 U.S.C. § 1291.  A "district court's ruling on a defendant's collateral attack of a deportation proceeding is reviewed de novo," *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1053 (9th Cir. 2003), as is dismissal of an information, *see United States v. Huping Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012).  A district court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion.  *See United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990).

## DISCUSSION

### A. Withdrawal of Guilty Plea

The district court may allow a guilty plea to be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A fair and just reason includes "intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). A change in the law can justify withdrawal of a plea. *See id.* at 887.

The district court did not abuse its discretion in allowing Rodriguez to withdraw her plea. After that plea was entered, *Lorenzo I* held that the definition of methamphetamine under § 11378 was broader than the definition under the federal Controlled Substances Act, and a violation of § 11378 therefore did not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i). 902 F.3d at 933, 939–40. Because a drug offense can only be an aggravated felony justifying removal if it involves a federally controlled substance, *see* 8 U.S.C. § 1101(a)(43)(B), *Lorenzo I* effectively invalidated Rodriguez's underlying removal.

### B. Dismissal of Information

In dismissing the information, the district court found that *Lorenzo I* foreclosed the government's argument that any difference between California and federal law about the definition of methamphetamine is illusory. But *Lorenzo I* has since been withdrawn, and *Lorenzo II* expressly stated that the government is not foreclosed from raising this argument in other cases. 752 F. App'x at 485. The

argument, even assuming it was foreclosed under *Lorenzo I*, is therefore properly before us.

We start by considering whether the California statute is on its face broader than the relevant federal law. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). California prohibits possessing for sale any "controlled substance" that is "specified in subdivision (d) . . . of Section 11055." Cal. Health & Safety Code § 11378. Section 1105(d), in turn, defines as a controlled substance "[m]ethamphetamine, its salts, isomers, and salts of its isomers." Cal. Health & Safety Code § 11055(d)(2). And another California statute provides that "except as otherwise defined, the term 'isomer' includes optical and geometrical (diastereometric) isomers." Cal. Health & Safety Code § 11033. Federal law similarly prohibits possession for sale of "methamphetamine, including its salts, isomers, and salts of isomers," but states that the "term 'isomer' means the optical isomer." 21 U.S.C. §§ 802(14), 812 Sched. II(c), Sched. III(a)(3).

The government, relying on California Health and Safety Code § 11001 ("Unless the context otherwise requires, the definitions in this chapter govern the construction of this division."), urges that based on its statutory "context," the California law is not broader than federal law.[1] The government argues that because both California and federal law prohibit possession for sale of methamphetamine and "its" isomers, they are identical, because the California statute is limited to those isomers of methamphetamine that

---

[1] The government argues that Rodriguez did not satisfy the requirements of 8 U.S.C. § 1326(d) by exhausting her administrative remedies and demonstrating deprivation of the opportunity for judicial review. But the government concedes that this argument is foreclosed by *United States v. Ochoa*, 861 F.3d 1010 (9th Cir. 2017), and raises the issue only to preserve it for further review.

actually exist and geometric isomers of methamphetamine do not.

We decline the government's invitation to rewrite California law. The argument requires us to look beyond the statutory language to matters of organic chemistry. And, the statutory scheme strongly suggests that the California legislature deliberately distinguished between the various isomers of controlled substances in its definitions and expressly noted when its definitions were conditioned on the existence of a particular isomer. *See* Cal. Health & Safety Code § 11055(d)(1) (defining amphetamine to include only "optical isomers"); § 11054(d) (defining the "optical, position, and geometric isomers" of hallucinogens as controlled substances); § 11054(d)(20) (defining certain tetrahydrocannabinols as including their "optical isomers"); § 11057(e) (defining fenfluramine as including its "isomers (whether optical, position, or geometric) . . . whenever the existence of those . . . isomers . . . is possible").

Rodriguez argues that this textual distinction ends the analysis. That argument finds support in our precedents. We have previously stated that if "a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (internal citation omitted), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018). In response, the government cites the Supreme Court's statement that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute" requires "a realistic probability, not a theoretical possibility, that the

State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). If there is no geometric isomer of methamphetamine, the government argues, there is also no "realistic probability" of California applying its statutes to conduct not forbidden by federal law.

The government's argument rests entirely on its factual assertion that the geometric isomer of methamphetamine does not exist. But, the district court never made such a finding, and we cannot do so for the first time on appeal.[2] *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). Because resolution of the factual issue of whether geometric isomers of methamphetamine exist has the potential to inform our disposition of this appeal and future cases, we remand to the district court for the limited purpose of resolving that evidentiary issue in the first instance. The panel will retain jurisdiction over the appeal and address its merits after the district court reports its factual findings.

## CONCLUSION

We affirm the district court's order permitting Rodriguez to withdraw her guilty plea, vacate the dismissal of the information, and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[2] We reject the government's argument that Rodriguez has forfeited any factual arguments on this issue by not responding to the expert declarations submitted by the government below. She, like the district court, appropriately relied on the then-extant opinion in *Lorenzo I*.