NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 15 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50139 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00537-BRO-24 |
| v. | |
| JOSE CESAR SANCHEZ, AKA Loco, AKA Locotroll, AKA Juan Sanchez, AKA Troll, AKA Trouble, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50173 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00537-BRO-27 |
| v. | |
| GISELLE CASADO, AKA Guera, | |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50212 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00537-BRO-13 |
| v. | |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

JOSE MANUEL DORADO, AKA Lazy,
AKA Yogi,

        Defendant-Appellant.

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

  v.

TANNOUS FAZAH, AKA Terist,

        Defendant-Appellant.

No.   17-50213

D.C. No.
2:13-cr-00537-BRO-14

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted March 3, 2021
Pasadena, California

Before:  GRABER, MILLER, and LEE, Circuit Judges.

Defendants Jose Cesar Sanchez, Giselle Casado, Jose Manuel Dorado, and Tannous Fazah timely appeal their convictions and sentences stemming from their participation in the activities of the Florencia-13 gang.  We vacate Defendant Dorado's sentence on Count Five, and we remand for resentencing on that count only.  We otherwise affirm.

1.  The district court correctly denied Defendant Fazah's motion to suppress. We review de novo the district court's legal conclusions and for clear error the

court's factual findings.  United States v. Peterson, 902 F.3d 1016, 1019 (9th Cir. 2018).

a.  Exigent circumstances justified the officers' entry into Fazah's apartment. After a man was beaten, shot, and killed in a nearby alley, two 911 callers independently reported seeing a group of persons in the apartment complex's parking lot and reported seeing only a subset of persons leave the parking lot. Some persons had arrived in a white car that remained in the parking lot.  After officers cleared the other two apartments and Fazah eventually opened the door to his apartment, a detective saw two apparently unconscious men in the apartment. The detective reasonably feared that the men were hurt and needed assistance; "considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others . . . from serious harm."  United States v. Reyes-Bosque, 596 F.3d 1017, 1029 (9th Cir. 2010) (internal quotation marks omitted).

Additionally, "the search's scope and manner were reasonable to meet the need."  Id. (internal quotation marks omitted).  Given that others had been hiding in the apartment, officers reasonably opened the door to a large closet in the room where the two prone men were lying.

The court did not clearly err in crediting the detective's testimony, which comported with his contemporaneous police report, that he could see the men from

outside the apartment.  See, e.g., United States v. JDT, 762 F.3d 984, 1002 (9th Cir. 2014) ("[I]t is the exclusive province of the fact finder to determine the credibility of witnesses." (internal quotation marks omitted)).  The photographs taken by Fazah's expert two years later did not definitively disprove the detective's testimony.

We decline to consider Fazah's arguments, raised for the first time on appeal, that hinge on factual development, such as whether Fazah opened the door only because the detective had threatened to enter and whether the detective actually inserted the key into the lock.  United States v. Guerrero, 921 F.3d 895, 897–98 (9th Cir. 2019) (per curiam), cert. denied, 140 S. Ct. 1300 (2020).

b.  Alternatively, even if the initial search was impermissible, suppression would not be warranted because the officers acted in good faith.  To justify suppression, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  United States v. Artis, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)).  Fazah has shown, at most, "isolated negligence" that does not justify suppression.  Id.

2.  The district court acted well within its discretion in addressing the topic of juror safety.  See United States v. Scott, 642 F.3d 791, 796 (9th Cir. 2011) (per curiam) (holding that we review for abuse of discretion the court's questioning

during voir dire); United States v. Ivester, 316 F.3d 955, 960 (9th Cir. 2003) (holding that we review for abuse of discretion "whether and how to hold a hearing on allegations of jury bias" stemming from a juror's safety concerns). For example, the court permissibly concluded that asking jurors explicitly about "fear" would do more harm than good. And in response to Juror 9's particularized safety concerns, the court conducted a hearing with the juror and concluded from the juror's responses and demeanor that, as the juror stated, the juror could be fair to both sides.

3. The district court's formulation of the instructions as to Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy did not result in reversible error. The instructions accurately required the jury to find that each "defendant became a member of the conspiracy knowing of its object and intending to help further or facilitate the scheme." See Salinas v. United States, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."). Any error in failing to add an additional element, announced in a non-binding, out-of-circuit case, was not obvious.

Read in their entirety, the instructions properly required that each Defendant know about the scheme; know the scheme's object; know that the scheme would

result in at least one conspirator's committing a pattern of racketeering acts; and agree and intend to facilitate or further that scheme. See United States v. Rodriguez, 971 F.3d 1005, 1012 (9th Cir. 2020) ("Jury instructions must be evaluated 'as a whole, and in context,' rather than in piecemeal.").

4. The district court correctly entered judgment against Defendants Dorado and Fazah as to their violations of the Violent Crimes in Aid of Racketeering Activity statute. The jury instructions accurately required a finding that a "substantial purpose" of the assault was gang affiliation. Id. at 1009–11. Ample evidence supports the jury's finding "that gang affiliation motivated the relevant conduct" of Defendants Dorado and Fazah. Id. at 1012. At the request of an influential gang member, who feared a threat to his status in the gang, Dorado and Fazah assaulted and killed another gang member.

5. We assume, without deciding, that the district court abused its discretion under Federal Rule of Evidence 403 by admitting photographs of graffiti on the courthouse. But any error was harmless. The photographs had very little non-cumulative probative value, and the risk of harm was low to nonexistent. The photographs predated the trial by two years, and no juror expressed any safety concerns after seeing the photographs. We readily conclude that "it is more probable than not that the error did not materially affect the verdict." United States v. Morales, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc).

6.  With several small exceptions, the district court did not abuse its discretion or otherwise err in its decisions concerning the testimony by Agents Starkey, Montenegro, and Velasquez.

The district court adequately ensured that the witnesses described the basis of their testimony so that the jury knew whether the testimony was lay or expert in nature.  The district court did not plainly err by giving a model dual-role instruction.  Agents Montenegro and Velasquez testified in two roles, a permissible practice, United States v. Gadson, 763 F.3d 1189, 1206–07 (9th Cir. 2014), and the instruction accurately described our caselaw.  Agent Starkey testified solely as a lay witness, but the court gave the instruction during her testimony only after Defendants agreed to the instruction, and the instruction pertained in part to lay testimony.  Any error concerning the inapt part of the instruction was not plain.

Nearly all of Agent Starkey's testimony was proper lay testimony because it stemmed from her experience in the investigation of this particular gang.  United States v. Barragan, 871 F.3d 689, 704 (9th Cir. 2017).  To the extent that her testimony at times was expert in nature, any error was harmless because she indisputably had the credentials of an expert witness.  United States v. Figueroa-Lopez, 125 F.3d 1241, 1246–47 (9th Cir. 1997); United States v. Maher, 645 F.2d 780, 784 (9th Cir. 1981) (per curiam); see also Gadson, 763 F.3d at 1213 n.10 (applying the same principle in the context of plain-error review).

7

We assume, without deciding, that small portions of testimony by Agents Starkey and Montenegro were impermissibly speculative or lacked proper foundation.  For example, Agent Starkey's initial testimony about the organizational structure, unconnected to a specific recorded call or any specific evidence in the record; her speculation as to what caused an imprisoned gang member's death; and Agent Montenegro's digression into a separate identity-theft scheme by two gang members may have strayed from permissible bounds.  We have carefully reviewed the entire record, and we conclude that any error was harmless.  The possibly impermissible testimony either was cumulative or pertained to tangential topics that could not have affected the jury's verdict.

7.  The district court did not commit reversible error in instructing the jury under Count Three's allegation of conspiracy, in violation of 21 U.S.C. § 846, to commit at least one of the drug distribution (or possession with intent to distribute) offenses described in 21 U.S.C. § 841(a)(1) & (b)(1).  Nor did insufficient evidence support the jury's drug-quantity findings.

No Defendant objected to the jury instructions, so we review them for plain error.  United States v. Backman, 817 F.3d 662, 665 (9th Cir. 2016).  We recently held that

> a defendant convicted of conspiracy under § 846 is subject to a penalty under § 841(b)(1)(A)–(B) if the government has proven beyond a reasonable doubt that the underlying § 841(a)(1) offense involved the drug type and quantity set forth in § 841(b)(1)(A)–(B).  The

government does not have to prove that the defendant had any knowledge or intent with respect to those facts.

United States v. Collazo, 984 F.3d 1308, 1336 (9th Cir. 2021) (en banc). Reading together the jury instructions and the verdict form, which required a finding that the conspiracy that the defendant joined involved a specified quantity of drugs, we conclude that the jury was not misled. See United States v. Pineda-Doval, 614 F.3d 1019, 1031 (9th Cir. 2010) ("To determine whether the jury was misled, we must consider the instructions and the verdict form together.").

Sufficient evidence supported the jury's findings of drug quantity because evidence supported the conclusion that fellow gang members sold the requisite quantities of drugs. See Collazo, 984 F.3d at 1319 ("When the government proves that a defendant had a knowing connection with an extensive enterprise (such as a drug trafficking organization) and had reason to know of its scope, a fact-finder may infer that the defendant agreed to the entire unlawful scheme."); see also United States v. Smith, 609 F.2d 1294, 1300 (9th Cir. 1979) ("The jury could conclude [the defendants] knew that drugs are frequently dispensed through a network of suppliers, wholesalers, and scattered retailers in different states and therefore that they were not [the supplier's] only retailers."); id. (rejecting the significance of a defendant's assertion that "he never met with the other retailers" on the ground that a co-conspirator need not know "all of the participants in the conspiracy").

9

8. Cumulative error did not affect the jury's verdict. The "combined effect of [any] errors" did not "amplify each other in relation to a key contested issue in the case." United States v. Preston, 873 F.3d 829, 835 (9th Cir. 2017) (internal quotation marks omitted).

9. The district court did not clearly err at sentencing in determining that Defendant Sanchez was responsible for more than 150 grams of methamphetamine. The court permissibly concluded that the sales by fellow gang members constituted "relevant conduct" pursuant to U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B), because those sales were part of the "jointly undertaken criminal activity," were in furtherance of the activity, and were reasonably foreseeable in connection with that activity.

The court did not procedurally err, plainly or otherwise, at Defendant Casado's sentencing hearing. The presentence report calculated drug quantity, and the court expressly adopted the presentence report in general and the specific drug-quantity finding.

Defendants Dorado and Fazah join both arguments, but those arguments fail for the same reasons. The court did not err at their sentencing hearings.

10. With the exception noted below, the district court did not err in imposing life sentences on Defendants Dorado and Fazah.

The district court independently determined, for Guidelines purposes, that Defendants were responsible for first-degree murder. Contrary to Defendants' argument, the court did not misunderstand the nature of the jury's finding. Nor did the court misunderstand the elements of first-degree murder. Next, the court did not treat the Guidelines' "range" of life imprisonment as presumptively reasonable. The court's factual findings at sentencing did not increase the sentence beyond the statutory maximum penalty of life imprisonment, 18 U.S.C. § 1963(a), so Defendant Fazah's constitutional challenge fails. United States v. Rodriguez, 851 F.3d 931, 948 (9th Cir. 2017).

The court did not clearly err in finding, by clear and convincing evidence, that Defendants Fazah and Dorado were responsible for first-degree murder. The court permissibly concluded that a gang member ordered Fazah to kill the victim, an eyewitness testified that Fazah shot the victim, and Fazah boasted about the crime afterwards. Although the evidence was not equally overwhelming with respect to Dorado's agreement to the plot, the court's view that clear and convincing evidence supported his culpability was not "illogical, implausible, or without support in the record." United States v. Graf, 610 F.3d 1148, 1157 (9th Cir. 2010). For example, after Fazah received the order to kill and handed the phone to Dorado, Dorado assured the caller not to worry because Fazah would "get

11

at" the victim, suggesting that Dorado overheard the order to kill; and afterwards, Dorado reported the murder as a "done deal."

11. The district court correctly calculated the mandatory minimum sentences under 21 U.S.C. § 841 for Defendants Dorado and Fazah. Defendants' convictions retain federal significance despite state-court recharacterizations of the convictions. United States v. Diaz, 838 F.3d 968, 974–75 (9th Cir. 2016). Defendants' constitutional claims, raised for the first time on appeal, do not constitute plain error. See, e.g., Harmelin v. Michigan, 501 U.S. 957 (1991) (affirming a life sentence, as consistent with the Eighth Amendment, for a single conviction of possessing 672 grams of cocaine base). Similarly, we reject Defendant Fazah's argument, raised for the first time on appeal, that one of his convictions is not categorically a drug offense. This court has held that the possible overbreadth of California's definition of methamphetamine is a factual question, United States v. Rodriguez-Gamboa, 946 F.3d 548, 552–53 (9th Cir. 2019), and "an error that hinges on a factual dispute is not 'obvious,'" United States v. Yijun Zhou, 838 F.3d 1007, 1011 (9th Cir. 2016).

12. The district court neither clearly erred in its factual findings nor abused its discretion in applying the Guidelines, United States v. Gasca-Ruiz, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc), in rejecting a "mitigating role" reduction for Defendant Casado or in applying gun-possession and drug-smuggling

12

enhancements for Defendant Fazah.  As in <u>United States v. Diaz</u>, 884 F.3d 911, 916 (9th Cir. 2018), nothing in the record here suggests that the district court misunderstood the Guidelines during Casado's sentencing hearing.

13.  As the government concedes, the district court plainly erred by imposing, on Count Five as to Defendant Dorado, a sentence that exceeded the statutory maximum.  We remand for resentencing on that count <u>only</u>.  <u>United States v. Evans-Martinez</u>, 611 F.3d 635, 645 (9th Cir. 2010).

**AFFIRMED in all respects but one:  Defendant Dorado's sentence on Count Five is VACATED, and case no. 17-50212 is REMANDED for the limited purpose of resentencing on that count only.**