NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 1 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-4399 |
| Appellee, | D.C. No. 2:19-cr-00415-CJC-1 |
| v. | |
| MOTTY MIZRAHI, | MEMORANDUM[*] |
| Appellant. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted September 4, 2025
Portland, Oregon

Before: BADE and SUNG, Circuit Judges, and SIMON, District Judge.[**]

Motty Mizrahi ("Mizrahi") pleaded guilty to six counts of wire fraud in

violation of 18 U.S.C. § 1343 (Counts 1-6) and one count of aggravated identity

theft in violation of 18 U.S.C. § 1028A(a)(1) (Count 7). The district court denied

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

Mizrahi's motion to withdraw his guilty plea to Count 7 and sentenced him to a term of imprisonment of 84 months on Counts 1-6 followed by 24 months on Count 7. Mizrahi appeals the denial of his motion, his conviction on Count 7, and his sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

From 2012 to 2019, Mizrahi and his older brother defrauded members of their religious community out of millions of dollars. Mizrahi made material misrepresentations and, after losing substantial investor funds, used later investments partially to repay and lull earlier investors. Mizrahi also worked for a private, religious high school. In that role, he obtained the signature of the school's treasurer on school checks with the payee's name left blank. Rather than using these checks for authorized purposes, Mizrahi deposited many into his own bank account, ultimately embezzling $547,263 from the school. He then used some of this embezzled money to pay—and lull—prior investors.

1.      Mizrahi argues that the district court erred when it denied his motion to withdraw his plea of guilty. "We review the denial of a motion to withdraw a guilty plea for abuse of discretion." *United States v. Hernandez*, 105 F.4th 1234, 1238 (9th Cir. 2024). A defendant may withdraw his guilty plea before the sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). A fair and just reason can include "intervening circumstances," including a "change in the law." *United States v.*

*Rodriguez-Gamboa*, 946 F.3d 548, 551 (9th Cir. 2019). A change in the law may justify the withdrawal of a plea when there is "[a] marked shift in governing law that gives traction to a previously foreclosed or unavailable argument." *United States v. Ensminger*, 567 F.3d 587, 592 (9th Cir. 2009).

A grand jury returned a First Superseding Indictment against Mizrahi and his brother. Shortly before trial was set to begin against both, Mizrahi pleaded guilty to all seven counts. A jury subsequently found Mizrahi's brother guilty on five out of six counts of wire fraud. Before the district court sentenced either defendant, the Supreme Court decided *Dubin v. United States*, 599 U.S. 110 (2023). Two months later, Mizrahi moved to withdraw his guilty plea to aggravated identity theft, arguing that his conduct, albeit fraudulent, did not fall within the scope of that federal crime. Denying Mizrahi's motion, the district court ruled that *Dubin* did not change prior Ninth Circuit law.

We agree. In *Dubin*, the Supreme Court confirmed that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal," explaining that the defendant's misrepresentation must generally go to the "who" of the misrepresentation, not merely the "how" or "when." *See Dubin*, 599 U.S. at 116 & n.2, 131-32. That reasoning is consistent with our earlier opinions, including *United States v. Hong*, 938 F.3d 1040, 1050-51 (9th Cir. 2019), where we held that

3                                                                 23-4399

a defendant does not "use" his patients' identities when he merely misrepresents the services provided to those patients, and *United States v. Harris*, 983 F.3d 1125 (9th Cir. 2020), where we held that a defendant "uses" a means of identification under § 1028A when the means of identification is both "central to the wire fraud" and used to "further or facilitate" the fraud. 938 F.3d at 1127-28. In *Harris*, we relied on a Sixth Circuit decision, *United States v. Michael*, 882 F.3d 624 (6th Cir. 2018), which *Dubin* cited favorably. *Compare Harris*, 983 F.3d at 1128, *with Dubin*, 599 U.S. at 117, 123, 132.

2.      Mizrahi also contends that the facts do not support his conviction for aggravated identity theft.[1] Although Mizrahi did not raise this argument during his plea colloquy, he preserved the issue in his motion to withdraw his plea. Further, a district court abuses its discretion when it makes an error of law. *Koon v. United States*, 518 U.S. 81, 100 (1996). Mizrahi admitted that, without lawful authority, he used one of the school's checks, signed by the school's treasurer, during and in relation to a violation of the wire fraud statute. The proceeds of the check were used to lull an investor. Because "a signature is a name," it is a "means of

---

[1] The aggravated identity theft statute provides, in relevant part: "Whoever, during and in relation to any [enumerated] felony . . ., knowingly . . . uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). Wire fraud is one of the enumerated felonies. *Id.* at § 1028A(c)(5).

identification." *See United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008).[2]

Mizrahi's misuse of the signature was at the crux of what made his conduct illegal

and is thus sufficient to satisfy *Dubin*.

       3.     Mizrahi argues that applying § 1028A(a)(1) here violates principles of

federalism and that the statute is unconstitutionally vague. Because he did not raise

these arguments below, we review for plain error. *See United States v. Bain*, 925

F.3d 1172, 1176 (9th Cir. 2019). Thus, to obtain relief, Mizrahi must show: (1) "an

error or defect"; (2) that was "clear or obvious, rather than subject to reasonable

dispute"; (3) that "affected [his] substantial rights"; and (4) that "seriously affects

the fairness, integrity or public reputation of judicial proceedings." *Puckett v.

United States*, 556 U.S. 129, 135 (2009) (brackets omitted). "An error cannot be

plain where there is no controlling authority on point and where the most closely

analogous precedent leads to conflicting results." *United States v. De La Fuente*,

353 F.3d 766, 769 (9th Cir. 2003).

      The application of 18 U.S.C. § 1028A here is consistent with federalism.

Mizrahi's predicate offense was a violation of a federal law. Further, he fails to

identify any controlling authority holding either that § 1028A violates federalism

or is unconstitutionally vague. This alone is fatal to Mizrahi's arguments under

---

[2] That *Blixt* involved a forged signature is not relevant to this point. We have previously held that § 1028A(a)(1) does not require impersonation, assuming an identity, or passing oneself off as a particular person. *See Harris*, 983 F.3d at 1128.

plain-error review.[3]

4.    At sentencing, Mizrahi conceded a 16-level guideline enhancement for actual losses exceeding $1.5 million but objected to the district court's 18-level enhancement for actual losses exceeding $3.5 million. U.S.S.G. § 2B1.1(b)(1)(J). "We review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion." *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021).

The district court found actual losses of $5,024,983, consisting of $4,477,720 sustained by almost three dozen investors plus $547,263 suffered by the school that employed Mizrahi. These findings were supported by documents that were provided to Mizrahi during discovery and a chart that the government filed with its sentencing position. Although the court also considered two summary charts that were not provided to Mizrahi during discovery, the government had previously used those charts during its cross-examination of Mizrahi during his brother's trial.

Mizrahi argues that the district court should have used the Securities and Exchange Commission's ("SEC") lower loss calculation in an earlier civil lawsuit.

---

[3] Although Mizrahi cites Justice Gorsuch's separate opinion in *Dubin* concurring in the judgment, no other Justice joined that opinion.

Rejecting that argument, the court accepted the government's explanation that the SEC's analysis relied on a different methodology and timeframe. The district court did not clearly err or abuse its discretion.[4]

5.      The district court imposed a two-level "sophisticated means" enhancement. U.S.S.G. § 2B1.1(b)(10)(C). Mizrahi argues that his fraud was not especially complex. He held himself out, however, as a sophisticated money manager well enough to deceive nearly three dozen investors out of millions of dollars. Mizrahi misrepresented being a licensed broker or certified public accountant, to encourage members of his community to invest with him. He also assured clients that the funds remained in cash but leveraged small amounts using sophisticated option and insurance-hedging strategies. He created a prospectus showing false historical returns and fake account statements with inflated balances. To do this persuasively during a seven-year period required sophistication. Further, Mizrahi lulled investors not to alert authorities, which also requires sophisticated means. *See generally United States v. Lane*, 474 U.S. 438, 451-52 (1986) (discussing mailings designed to lull victims into a false sense of security, postpone their ultimate complaint to authorities, and make the defendants' apprehension less likely). Thus, the district court neither clearly erred nor abused

---

[4] Mizrahi also appeals the district court's alternative finding based on "intended" loss. Because that was only an alternative finding by the district court, we need not consider that argument.

its discretion in finding that Mizrahi used sophisticated means.

6. The district court imposed a two-level enhancement because the offense involved ten or more victims. U.S.S.G. § 2B1.1(b)(2)(A)(i). Mizrahi does not appeal from that finding. The same enhancement can also be made if the offense caused "substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(iii). At sentencing, the district court expressed its "preliminary thoughts" regarding § 3553(a) factors, including "the devastating loss to the high school which had to close because of Mr. Mizrahi's misappropriation of its funds." The court then invited comments from the parties.

Mizrahi argues that "it is a 'significant procedural error' for a sentencing judge to 'choose a sentence based on clearly erroneous facts.'" *United States v. Johnston*, 789 F.3d 934, 943 (9th Cir. 2015) (quoting *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc)). After the court offered its "preliminary thoughts," Mizrahi's counsel stated that the school closed three years after the embezzlement and the school's website disclosed several reasons for the closure without ever mentioning Mizrahi.

"A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). Mizrahi embezzled $547,263 from the school where he worked from 2012-2019. At sentencing, the district court reviewed the presentence report, and the

presentence report includes information supporting the district court's statements regarding the school closure. Mizrahi never objected to any of these statements in the presentence report. Even if the district court's "preliminary thoughts" rise to the level of a factual finding on which Mizrahi's sentence was based, which is questionable, such a finding would not be illogical, implausible, or without support in the record and, thus, not clearly erroneous. *See United States v. Romero-Rendon*, 220 F.3d 1159, 1161 (9th Cir. 2000) (the court may rely on an unchallenged presentence report to find facts at sentencing).[5]

    **AFFIRMED.**

---

[5] We deny the pending motion for judicial notice because it is not necessary for the court to consider the 2016 prosecutorial memo to resolve this appeal. Further, it is not generally appropriate to take judicial notice to "establish the legal principles governing the case," and Mizrahi relies on that memo to show that § 1028A is vague. *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002)).